Boynton, J.
The liability of the defendants in error,, as partners, on the promissory note sued on, is asserted by the plaintiff on two grounds. The first is, that the Southern Ohio Coal Company was not legally organized, because of *165 the non-performance of certain conditions which it is alleged were to precede the vesting of corporate power under the charter of the company, the claim being that there was no power to engage in the business for which the company was formed, until the whole capital stock was subscribed, and, hence, that those owning stock at the time the debt was contracted, to recover which suit is brought, whether original members of the company or not, became liable as partners for its payment, although no partnership relation was contemplated by them. To this position there are several decisive answers. In the first place, the subscription of the whole amount of capital stock was not a condition precedent to the vesting of corporate power under the charter, nor a condition precedent to the right to borrow money and engage in the business for which the association was formed. The language of the ■charter is, that “ R. M. C. Lovell, J. II. French, and B. Homans, Jr., and their associate members and assigns, be, and they are hereby, created a body politic and corporate under the name and style of the Southern Ohio Coal Company,” with “ power to organize said company by the ■appointment of a president and such other officers as they may deem necessary, at such time and place as they may designate by notice previously given.” Its capital stock ■consists of $300,000, divided into shares of $100 each, “which may be subscribed and paid for in such manner as the by-laws of said company may prescribe.”
Express power is conferred to purchase or lease real estate within or without the State of Kentucky, and to borrow money on such terms, and receive the same in such way, as-may be prescribed by the by-laws, oras may be determined on by the stockholders; and this is authorized to be done as soon as the corporation is organized. The charter nowhere makes, either in express terms or by implication, a subscription of the entire amount of capital a .,oek a condition to the right to borrow money and engage in the business for which the corporation was organized. In the second place, it by no means follows that the *166 subscribers to tbe capital stock of an association supposed) to be a corporation, or the persons who organize it,, become individually liable for its debts, by reason of a failure upon the part of the corporation to comply with the requirements of the charter in its organization. That personal liability does not attach to stockholders as partners,, or otherwise, from the circumstance that the powers of the-association have.been exceeded without their authorization, is a principle well established. Medill v. Collier, 16 Ohio St. 599. Those only who engage in or sanction the business, not within the purposes for which the association was organized, are liable for the debts contracted in carrying-such unlawful business forward. Rianhard v. Hovey, 13 Ohio, 300.
It not only is not claimed, in the present case, that the-defendants in error, or either of them, contracted the debt for which the note in suit was given, but it clearly appears that neither of them had any knowledge that the note was given or outstanding. Therefore, to hold them liable upon it as makers, in the face of these facts, would be to create-a promise where none existed, and a consequent liability where none was contemplated by any party to the transaction in which the note originated.
Again, the evidence discloses the fact that the note sued on was, in the first instance, discounted byB. Homans, Jr.,, the treasurer of the company, and one of the original corporators; that he had full knowledge that the company was exercising the powers that the charter professed to grant, and that in discounting the note for the company kedealt with and treated it as a corporation, are undisputed facts. It further appears that the plaintiff, through its cashier, was informed that the company was a corporation before it received the note as collateral to the loan to Ho-mans. It accepted and received it as corporate paper and as carrying with it only a corporate obligation, and therefore is estopped from denying the corporate existence of the-company executing it.
The second ground upon which the liability of the de~ *167 fendants, as partners, is claimed to arise is, that the company, although it may have a legal existence in Kentucky, has, and can have, no such existence in Ohio; that its incorporation in the former state to conduct a business beyond its limits, and within Ohio, is a fraud upon our laws, because the stockholders are not, by the laws of Kentucky, individually liable to any extent for the debts of the corporation. How this fact, if true, in the absence of a statutory regulation, operates to make the defendants liable on a promise they never made, either expressly or impliedly, it is difficult to understand. It is not doubted, that a state-may forbid a foreign corporation from exercising corporate-powers within its limits, or may lay such restrictions upon their exercise as will prevent it, except on condition that-the stockholders become bound for the debts of the corporation. But the mere circumstance, that, by the laws of the-state by which the corporation is created, the stockholders may not be individually liable, to any extent, for the debts of the corporation, has never been deemed a sufficient ground for the exclusion of the company from exercising' its corporate powers within this state. The right of such foreign corporation to acquire and hold property in the state, and to sue and be sued in her courts, has been repeatedly recognized. In Hanna v. International Petroleum Co., 23 Ohio St. 622, it was said, “ that a foreign corporation, under the present laws of Ohio, can hold property in this state and sue and be sued in her courts, is well settled.” And to the argument that the company which was organized in Pennsylvania was not a corporation because it was empowered by its charter to do business outside the state of its creation as well as within, it was said “ that the company was a legal corporation in Pennsylvania as soon as organized there, and without commencing business there. Being such, it surely had the right to sue for and recover its property wherever found, provided the laws of the place did not deny it the right.” In The Newburg Petroleum Co. v. Weare, 27 Ohio St. 343, it Avas held by the Commission that “ to permit a corporation, lawfully organized in' an *168 other state, to do business in Ohio, was not against public policy, nor contrary to her laws.” There is nothing in the facts of the present case to withdraw it from the operation of the principle applied in the above cases.
The claim that the charter was sought and obtained in Kentucky, in order that the' stockholders might avoid individual liability for the debts of the corporation, is not established by the evidence. What effect, if any, such fact would have, we have not considered. There is little doubt that the company would have organized under the laws of Ohio had not the statute required the officers and a majority of the directors to reside within the state.

Judgment affirmed.